May it please the Court, good afternoon, John Smeltzer for the United States. Your Honors, I'll be sharing time with David Osias for the Imperial Irrigation District and hope to reserve five minutes for rebuttal. Your Honors, Section 395 of Public Law 109-432 directs the Secretary of the Interior to carry out the All-American Canal Lining Project upon the date of enactment, which was December 20, 2006, without delay and notwithstanding any other provision of law. Given this clear mandate from Congress, the present injunction against the project cannot stand. The injunction was sought by the plaintiffs and imposed by this Court based on alleged violations of NEPA. Congress has now changed the legal framework for the project and directed the Secretary to proceed notwithstanding any other provision of law, including any alleged outstanding NEPA obligations. In other words, Congress has exempted the project from further NEPA compliance. Given this exemption, there is no legal basis for the pending injunction and it must be lifted immediately. For the same reasons, Counts 5 through 8 of the First Amended Complaint are also moot. All of those counts allege violations of NEPA and other statutes. Congress, through Section 395, has directed the Secretary to proceed notwithstanding such other provisions of law. There is no reasonable alternative interpretation of Section 395. Plaintiffs, CDEM appellants here have argued that Section 395 only directs the Secretary to carry out one particular alternative and to complete supplemental environmental analysis of that alternative as promptly as possible. That reading ignores the plain terms and context of the statute. At the time the legislation was enacted, the Secretary was already proceeding with the alternative that was identified and endorsed by Congress in Section 395. The only delay in implementing the project was the allegation that the Secretary had not complied with particular statutory requirements under NEPA and other statutory obligations. If Congress had intended to compel further NEPA analysis on an expedited basis, Congress would have simply stated the Secretary shall complete further analysis by X date. Instead, Congress directed the Secretary to carry out the project without delay, notwithstanding any other provision of law. Those clauses must be read as a whole. Congress acknowledged that proceeding imminently, that is, without delay, could conflict with NEPA and other statutory obligations. Congress directed the Secretary to proceed notwithstanding those other statutory obligations. Given the plain terms of Section 395, the only remaining questions concern Section 395's constitutionality. Plaintiffs have raised several constitutional theories as to how the section has run afoul of the Constitution. All of those claims lack merit. First of all, let me address Article III and the separation of powers issues. The question there, Your Honors, is whether Congress acted within its constitutional powers to legislate, including its power to legislate with respect to particular projects, or whether Congress overstepped that role to direct particular findings in a matter before the judiciary. When addressing this issue, this Court is governed by the constitutional principle of avoidance, or the rule of avoiding interpretations that would lead to constitutional problems. If the legislative directive can reasonably be interpreted as a permissible statutory amendment, it must be so interpreted. Here, Section 395 plainly affects a statutory amendment. And, Your Honors, it's not a close case. This Court has addressed cases that raise much closer questions. For example, in the Mount Graham cases involving the Red Squirrel, there was legislation in those cases that specifically stated that a particular project shall be deemed to be in compliance with terms of law. Here, we don't have the Mount Graham problem or the appearance that the Congress is directing the Court to find a particular project in compliance with law. What Congress did here was acknowledge that the project may not be in compliance with particular statutory obligations and to authorize and direct the secretary to proceed with the project, notwithstanding those potential alleged violations. The fact that the particular change in law affected only one project and was enacted while the present suit was pending does not make the legislation invalid. Congress may enact rules to govern specific Federal projects on Federal property, and Congress may also enact legislative changes without violating rights of litigants suing under existing laws. This Court has repeatedly upheld and enforced legislation enacted in such context. In the Mount Graham cases, in the Ecology Center cases, in Stop H3 Association, all of those cases addressed single project exemptions, and in all circumstances, those exemptions were upheld against separations of powers challenges. Let me quickly address the Tenth Amendment question and the arguments that have been raised under the Tenth Amendment. First of all, let me preface my comments by saying the United States does not concede that the plaintiffs here would have standing to raise Tenth Amendment concerns. As we noted in our reply on page 13, note 6, the Supreme Court has stated that there is no standing for individual persons to enforce alleged Tenth Amendment violations, and the most recent appeals court's decisions from the First and the Second Circuits have stated that there is no standing in that context. Setting aside the standing question, the critical issue for a Tenth Amendment claim is whether legislation compels a State to implement a Federal regulatory program. Here, Section 395 does not compel California to do anything. The project is a joint Federal project. There is State funding, and the State has a critical role, and the municipal entities have a critical role in completing the project. But Section 395 does not compel that participation. It simply compels the Secretary to carry out the Federal part of the bargain. And again, constitutional questions under the Tenth Amendment are also subject to the rule of avoidance, and if this legislation can be permissibly read as not raising a Tenth Amendment problem, which it clearly can, this Court must read it as not raising any particular problems. Unless this Court has any other specific questions. Just one practical question. At what stages, if the injunction were lifted soon, what would be the construction schedule? Do you have one? Is there an imminent need, I guess, for a quick decision? There is an imminent need for a quick decision in the sense that there is a certain construction season and that there is a window of opportunity in order to get started, in order to meet the deadlines. So what is that? I apologize, Your Honor. We didn't specifically brief those issues, and I'm not prepared to give the specific time frame. Okay. But it is coming up, and if the Court would like further briefing on that, we can provide it. Thanks. Good afternoon, Your Honors. David Osias on behalf of the Material Irrigation District. Let me start with a question that the Justice inquired. And for your convenience, there is more detail than I can remember in the motion to lift the injunction filed in November by the Imperial Irrigation District. Yes, I was asking for more or less an update on that, if you have one. There are two schedule calendar year sensitive periods. One involves the volume of flow in the canal. And although a parallel canal is being constructed, the activity that's going on needs to occur, some of it, in low-flow periods, naturally low-flow periods. The winter, because it's cooler in the Imperial Valley, is the low-flow period, and it runs approximately, again, subject to checking those declarations, from about November to, say, March. Okay, so we have some of it left. The second time-sensitive component was brush clearing for certain projects. Actually, it was brush clearing for certain construction activities, trying to do it at a time when birds weren't nesting. We have a program to stake out and protect nesting sites, but if it's not nesting season, it's much more efficient to clear scrub. These aren't endangered species, per se, just birds in general. That window officially of non-nesting season, as defined in our contract, ended February 15th, or, yeah, ended February 15th. It doesn't become officially non-nesting season again until sometime in the fall. It's about seven months from now. That doesn't mean no work can go on because we're during nesting season. It just means we have to do it a different way, and we have to take care to look for nesting sites and stay away from them. Other activities remain time-sensitive, and I can't give you a February update, but we had the adjacent wetlands habitat construction. Excavation was about 90 percent complete at the time of the injunction, but by not being complete, it was subject to significant erosion. That's been left that way. The bad news for California, the good news for construction, is there's been almost no rain in that part of the state yet. That's what would cause significant erosion there. It would be nice to get that finished clearly before one of these rainstorms actually reaches the desert. Second, there were potted plants, trees, to be put in the ground. They were left in their pots. I do not have an update. Obviously, I was informed when we filed our motion, the sooner we could get them out of their pots. Okay. I think that gives us a pretty good idea. Okay. And, again, I would refer you to the details there. Without getting every shovel full. Your Honor, perhaps without going into the same level of detail, the question is what does the legislation mean and why was it passed? And I think the common sense answer is Congress has grown impatient with the delay in getting this project done. Essentially, in three words, I think they said enough is enough. We should remember why the project is being constructed at all. There's a commitment to a tribal settlement water supply, which has been delayed since 1988, and there is a need for Colorado River conserved water in California that this project is designed to meet. And we should remember why there's the lawsuit, and that is they wish this water to go to Mexico for either farming or environmental purposes, which it cannot do. And so when Congress says with a string of words all in a row, notwithstanding any other provision of law, on the date of this enactment, the Secretary shall, without delay, carry out the project, there's a pretty good sense of they mean now. With respect to what we can glean from the few words they've used, we should remember that this is the third time they've spoken on this subject. And so although this law may have no lengthy legislative history, we have better than legislative history. We have three laws passed, and if two points can define a line, certainly three laws can define a trend. And the trend is from 1988 in the San Luis Rey Act, where this project was allowed, the Secretary may do it and may use this water to satisfy tribal water needs, and three alternatives could be considered and selected. We went to 2000 in the Packard Amendment, where the project was mandated. The tribal water had to come from this project, but the alternatives were still up to the United States, to now 2006, where the project is mandated. The preferred alternative is directed by Congress. The schedule is, upon enactment without delay, directed by Congress. And so we can see that each time Congress has acted, it has further and significantly reduced the discretion afforded to the United States. And without repeating what I said last time I was at the podium, that discretion, frankly, that lack of discretion, is critical to the analysis under the public citizen Supreme Court case. And so what purpose would NEPA review do for the complaint that's in existence? Paragraphs 28, 32, and 75 of the amended complaint say that the United States improperly evaluated project alternatives, didn't give enough weight to the well field alternative that might be more environmentally friendly. We have Congress saying the parallel canal alternative is the project you shall promptly do. There's no discretion there. Public citizens say, don't need to do any further NEPA review. What further benefit from evaluating the cutoff of water to Mexico? This is not a change, frankly. In fact, I want to step back and say, unlike many of the cases that this circuit has wrestled with with respect to new legislation, this legislation is consistent and confirms. The district court's conclusion can't do anything about activities in Mexico. Impacts in Mexico are governed by the treaty. The loss of water under this preferred alternative picked by Congress now in this new law, the lining water that's saved is to be distributed as set forth in the contract referenced in the law. So, again, under public citizen, what purpose to evaluate something where a different decision, excuse me, cannot be made? The focus of the relief sought is from the injunction. The opposition is to essentially everything but the injunction. Although the law is attacked on many theories, there is no foundation for saying that the words, which I'll now paraphrase, do it now, please, from Congress, does directly contradict a request for a temporary injunction or a permanent injunction. And the complaint prays for a permanent injunction. The motion brought to this Court earlier this last year obtained a temporary injunction. And those remedies are no longer available. So we'd ask that the motion be granted. Thank you, counsel. May it please the Court, R. Gaylord Smith for the appellants. Having lost three prior efforts to defeat the injunction, the disgruntled litigants got Congress in the dead of night to pass an unconstitutional rider. If the rider means what the government says it means, if it really means what the government says it means, it is profoundly unconstitutional because it is an unlimited delegation of power in the notwithstanding clause. Why would only NEPA, ESA, and the other environmental statutes be eliminated if this clause means what it says? Why not also OSHA, which provides work safety rules, which can slow down construction? Why not the NLRA, the National Labor Relations Act, which allows workers to strike? Why wouldn't that be swept away, too, by the notwithstanding clause? Why wouldn't immigration laws? None of those laws apply directly to the Secretary of Agriculture, do they? Pardon me? None of those laws apply directly to the Secretary of Agriculture like NEPA does. I mean, Secretary of the Interior. In other words, NEPA tells the Secretary what to do. And I don't think OSHA tells the Secretary what to do on this project because the Secretary has no workers there. Well, the Secretary contracts, Your Honor. Well, so it may bind the contractors, but it doesn't apply to the Secretary. I've never heard of that before. Well, the notwithstanding clause interpretation that the government would like you to follow wipes away all laws, not just environmental laws. Any law at all. Well, no, but it's all in relation to what the Secretary of the Interior must do. Correct. I don't think it necessarily, you know, is with respect to what anybody else is supposed to do. No. The government is simply saying that. For instance, I don't know even if it applies to their pollution control district. Well, for example, they say, oh, we're going to follow the air pollution control laws. But why? Notwithstanding any other law would exclude those as well. What the government would like to do is pick and choose which laws it can follow. And this statute is unconstitutionally vague because it allows us no guidance as to which laws the government's going to follow or not. If this law truly allowed Interior to carry out the project, notwithstanding any other law, it could commandeer California's assets in violation of the Tenth Amendment to get this constructed. Because Congress ---- Mr. Smith, don't exaggerate. It doesn't abolish the Constitution. You know, you've made, I might say, fairly strong claims. But one thing the statute could do is not abolish the United States Constitution. Now, I wish you would focus on your question, responding to Judge Tsushima. But as you very well know, I participated in the Red Squirrel cases. And as you say in your brief, the last Mount Graham case said that Congress could do this sort of thing. You make no attempt to distinguish Mount Graham. You want us to go, well, what are you going to do with that? What should we do with it? Your Honor, we only had a few pages in our brief. Well, you give us that. The case exists. We're supposed to follow it. What else do we do? Well, I think the ---- Why are you here if that's the law? We would like you to go beyond Mount Graham, and let me tell you why. Well, how do we do that? I think you can do it under Robertson versus ---- Well, Robertson was on the books, I believe, then. The one thing that you didn't reach in the Red Squirrel case, Your Honor, was Justice Thomas's identification of the Article III single project. Well, that's what happened in Red Squirrel, the telescope project. It was well identified as what Congress was legislating about. And the whole analysis, if I may say so, is focused on an injunction as something in the future. And Congress definitely can legislate as to the future. But what Congress shouldn't be able to do is to tell a litigant, when it is the litigant, midway through the case, oh, you win, they lose. What do you think they did in the Red Squirrel case? Well, the issue of strict scrutiny, Your Honor, on the right to petition issue was not raised. Let me explain what I mean. In Norr Pennington, for example, in the antitrust laws, that even a monopolist can go to court, petition the government, and that conduct is not used against it under the antitrust laws. Here, litigants under NEPA should be able to go to court, to come here, and without having Congress pass a law unique and special. Asserting a right to petition this Court? Yes. Well, where did that come from? That comes from the First Amendment, Your Honor. I know, but where did it come from in the procedure of this case? That's the problem when midway through a case, a writer is thrown at us. Of course we haven't planned this. This is new to the case, Your Honor, and it's an important issue. In United Mine Workers v. State of Illinois, the right to petition was enshrined. Norr Pennington enshrines the right to petition. The right to petition is a real thing. This Court also went a long way in the Stop H3 case in entertaining an intermediate scrutiny analysis under equal protection. My client, Calexico, is unlike New York because it can't, under this reading of the writer, it can't enforce its rights under NEPA like Los Angeles can or other cities can. Now, what's the rational basis for saying that that small town can have its air impacts analyzed as other cities can? Is there a rational basis? They say they need the water. Nothing under NEPA will deprive these folks of any water. What NEPA will do is say how you should best build the project and what impacts it will have on the mule deer who would die from this type of construction, that you can have the water and accomplish environmental goals too. What the government would like you to do is say no, proceed in ignorance as to the impacts. I say to you, there is nothing rational about ignorance. It is perfectly consistent with the wording of this writer to carry out the project in accordance with law, including NEPA. There is not a scintilla of evidence, unlike the Red Squirrel case, where Congress was very clear that they were trying to reverse this Court. There's not a scintilla of evidence in the hearings, Senate reports, or elsewhere in this record that this broad language was intended to eviscerate NEPA's application to this project. Congress has a lot of practice now in eliminating NEPA in projects, and it knows how to do it. It didn't do it here. Why didn't it do it? Well, one could only surmise that. But the fact that this was a 11th-hour adoption as part of an omnibus bill, in the face of widespread complaints among Congress that they had no idea what was in this 260-page bill, may supply the answer. Maybe they didn't know what they were doing. And if they didn't know what they were doing, Your Honors, why should you conduct the psychoanalysis of the Congress to supply the missing gap? The one thing that the Department of Justice, in its brief, ignores completely is the safety ridges. I submitted a letter with recent press. I don't know if the Court will entertain that or not. But the fact of the matter is that mule deer are dying in the Coachella extension of the American Canal because they can't get up the flat cement line ridges. The manner of death is particularly gruesome. They just don't drown. They claw themselves into bloody stumps trying to get out, and they die of exhaustion. The strong ones that can get out have such bloodied hooves that they die of exposure. Imagine now a man in there in the pain that they go through trying to claw their way out of a canal. The safety ridges is a real issue. The notion that Congress in this rider somehow gave discretion to reclamation to change this project from the ROD is unsupported. The ridges are in the 1994 plan. Now, how they get out of there without supplemental environmental review is a question that there is not an answer to. The only answer the government gives you is that it's not before you. On page 15 of the brief, they say this issue isn't before you. Well, Your Honors, when we filed for the injunction to the motion panels, I assure you, we asked for an injunction among other reasons because of the safety ridges. Now, the safety ridges is reason enough alone for this court to keep the injunction in place while you do perhaps better research, Your Honor, than I have in my paper so far on the First Amendment issue. Those are real issues. The Supreme Court, I think, got it right in U.S. v. Klein, which is a case that's been misunderstood by a lot of folks. When the Supreme Court rejected a rider to an appropriations bill, that reversed the result in a particular case. And it said they misinterpreted in Robinson and we misinterpreted in Graham. You think that old Civil War case was somehow governing those cases? A fantastic assertion. The problem with Robertson, Your Honor, is that the Supreme Court didn't get to the Article III issue. Had it done so, it should have plowed that ground again. And the wording in U.S. v. Klein is truly elegant. Well, I'm sure you're going to have a chance to argue this before the Supreme Court if they grant cert. I'd rather wait here, Your Honor. I'm going to have to persuade a Ninth Circuit panel to change the law. With all respect, I don't think you grappled with the Article III issue. I did in my concurrence. In your concurrence, you actually said you had serious doubts. I did. But I struggled with it. I came out that way. And those doubts are resolved as far as the circuit goes. It was a little bit different. You know, one thing that the Red Squirrel case didn't deal with was intermediate scrutiny. And unlike the Stop H3 case, there's no showing in this record that the legislation to eliminate NEPA review is substantially related to important governmental purpose. There's not the slightest indication in the record as to why having a fair examination underneath of all the impacts shouldn't be undertaken. Remember, it's been 13 years since there's been any public review of this project. A lot of things have changed, including the design of the walls. And under intermediate scrutiny, it's the government's burden, not our burden, to show a substantial relationship to an important government purpose. And, again, the purpose has to be asked, why is no NEPA review, why is the elimination of NEPA review for this one project necessary when it's granted for all other projects? What did Congress have in mind? The statement that Congress concluded that enough is enough, that's lawyer's rhetoric. It's not in the record. Now, the problem is how we ought to construe, notwithstanding any other provision of law. You've told us and urged that we can't construe that phrase broadly, that you can't possibly mean all laws. So what do you think it means? I have difficulty with the phrase, Your Honor, because it is so vague. But under the principle, under Robertson, again, that implications, that repeals by implications are disfavored, you can read that notwithstanding phrase, complying with NEPA is part of carrying out the project. That's what responsible government administrators do. They follow NEPA in carrying out the project. It's bound together. The notion that following NEPA is not part of carrying out the project is unsupported in the legislative history and is not required by the words. And if the words don't mandate the repeal of NEPA, then the default is with the plaintiffs. Well, let me put it another way. I don't know. The record doesn't answer it, Your Honor. But it seems to me that the government doesn't carry the day unless it can show affirmatively legislative history or an actual irreconcilable conflict in the laws. And I'll defer my remaining five minutes to Mr. Krakow. Mr. Krakow. I'm going to please the Court. My name is Gideon Krakow, speaking for the U.S. Environmental Appellants. Your Honors, the NEPA claims here were filed to ensure informed decision-making and transparency with regard to environmental issues in Imperial County. I've heard this case before. It is a case of coercion, where it ordered over the government's objection that the area be deemed in serious particulate nonattainment. This ruling requires tighter pollution thresholds and compliance with strict new air quality rules for Imperial. And these same requirements evidence why, on this record, with the language of this rider, the government cannot meet its burden to show that the environmental claims are moot. The reason for this, Your Honors, is that the rider expressly provides that the project be carried out in accordance with the 1994 Record of Decision. Well, that's not the only way to read the riders. You could read the riders referring to that ROD only to identify the project, not to say it has to be carried out in accordance with the ROD. Can't you? You might be able to do that, Your Honor. Isn't that a more sensible way to read it? Well, in that case, then, we have no guidance as to how this project is to be carried out. There is extensive mitigation requirement. It's all in the discretion of the Secretary of the Interior now. I think that that is the boundless kind of discretion, Your Honor, that does start to impede our Article 3. I think that the government is taking that language much too far in that instance. The ROD, for example, Your Honor, has pages of mitigation requirements. Well, it doesn't – 395 doesn't say it shall be built in accordance with the design of that ROD, does it? It says that it shall be carried out, the All-American Canal Project, as the preferred alternative in the record of decision. And that record of decision, Your Honor, has numerous air quality, acre-for-acre wetlands requirements. It is full of the kind of mitigation measure that we are trying to enforce in this very lawsuit. For example, it talks about compliance with the Imperial County Air Pollution Control District rules. Those rules weren't much in 1994, Your Honors, but now, in light of this Court's ruling, they are full of mitigation measures and, importantly, public and agency scrutiny. That is what this case is all about. And in that instance, to follow the language of this rider, we can harmonize that language with these claims. We have to follow those air pollution rules. The SEIS, in compliance with those rules, will help inform decision-makers on how to carry out this project, mitigation measures, study of following in Mexico, construction, excavation, even if it is for only the preferred alternative. Counsel argued, well, what is the benefit by going back and doing that? Well, that is the benefit. We can inform the decision-makers how to carry out, even if it is just a preferred alternative, Justice Tashima, in a manner to protect the environment. And that reading of this statute can be harmonized. We talk about the Red Squirrel case. Justice Newton, Red Squirrel is different. That statute there — Let me get back to that for a minute. Is that an issue we have to decide today on this motion? Your Honor, what we would request that you do is either reject the mootness argument and get to the merits of the case or remand for factual interpretation. There are a host of Ninth Circuit cases, whether it's the National Audubon case, Red Squirrel V, Justice Newton, or the Portland Audubon, where you remand to the district court to analyze all of these factual issues. That can be about the delay issue, what precise things will delay. It can be with regard to the issue of the Tenth Amendment, or it can be with regard to the equal protection claims and to what extent notice is required or to what level of scrutiny does apply. We should keep the injunction in place. There is nothing in this particular statute. Congress knows how to specify when it wants to get rid of NEPA. It did it in Red Squirrel. It did it in Ecology Center. It's done it in a host of cases cited by the government. It also knows how to tell the court to — that it has no jurisdiction. It did that in Robertson, Sierra Club, Ecology Center, by specifically indicating the judicial review was precluded. It didn't do it here. As a result, keeping the injunction in place and allowing a discussion of these factual issues is consistent with those opinions. Thank you, Your Honors. Thank you, counsel. Buttle. Thank you, Your Honors. Let me just briefly address a couple of things that came up. First, with respect to the interpretation of the phrase, notwithstanding any other law, the United States did not claim that the Section 395 exempts the project from all possible laws that may apply to the carrying out of the project by the imperial irrigation. Oh, not yet. Your Honor, pursuant to Judge Tashima's — Just the ones involved in this. Right. We would endorse Judge Tashima's suggestion that the proper way of looking at this is to look at the particular laws that are governing the Secretary's function in approving and overseeing the project, and those particular laws are the laws that Congress instructed the Secretary that he no longer needs to follow in proceeding with the project. The question of the slip form ridges, the escape ridges, and how they come into this project. There was the introduction of a newspaper article regarding the Coachella Canal. The issue about impacts to wildlife was not even in the appellate briefs that were before this case. The question was an issue of public safety. But setting — so that is not significant to the record that was before the court with respect to the injunction. But setting aside those issues, ultimately the issue before this Court is whether the NEPA claims are moved. And if there is some suggestion that Section 395 now has additional substantive requirements, that is a claim under Section 395 that is not before this Court. Although, again, we would endorse the interpretation or the suggestion of Judge Tashima that Section 395 was identifying the particular project. It wasn't saying that the Secretary no longer has any discretion or flexibility. Well, what's the status of the air pollution rules? I'm sorry? What's the status of the air pollution rules? In the record of decision, the Secretary committed to complying with all of the requirements of the Imperial Air Pollution Control Board and recommitted to complying with the substantive obligations in the SIR. Those are also built into the contracts as the briefing demonstrated in their state law requirements with respect to the air pollution. And so we're following the air pollution. And this lawsuit is not about enforcing those mitigation requirements. The lawsuit was claiming that we didn't do enough to meet our obligations, that we didn't go far enough. We are sticking with the obligations that we made. Unless there are further questions, we submit that the language of Section 395 is clear, well within Congress's authority, and that the injunction must be lifted. Thank you. I want to thank all of you for your briefing and for coming out here. We handled it on an accelerated pace. I know you did your briefing and arguments on an accelerated schedule, but we thought it was best to hear this as soon as possible, and we'll do our best to get out a decision as soon as we can. Thank you.
judges: Noonan, Tashima, Thomas